## MUNSON S. S. LINE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 265.

Circuit Court of Appeals, Second Circuit.

June 3, 1935.

White & Case, of New York City (Walter S. Orr, Russell D. Morrill, and Josiah Willard, all of New York City, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen. (Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., of counsel), for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This proceeding involves excess profits taxes for the year 1920 in the amount of $178,930.52, resulting from the disallowance of a deduction claimed under section 23 of the Merchant Marine Act of 1920, set forth in the margin.[1] The facts are not in dis-

[1] 41 Stat. 997 (46 USCA § 878): "Sec. 23. That the owner of a vessel documented under the laws of the United States and operated in foreign trade shall, for each of the ten taxable years while so operated, beginning with the first taxable year ending after the enactment of this Act [June 5, 1920], be allowed as a deduction for the purpose of ascertaining his net income subject to the war-profits and excess-profits taxes imposed by Title III of the Revenue Act of 1918 an amount equivalent to the net earnings of such vessel during such taxable year, determined

pute. During the year 1920 Munson Steamship Line, hereafter referred to as the petitioner, operated in foreign trade a fleet of ten vessels. The legal title to two of the vessels was in the petitioner. Each of the other eight vessels had been transferred by the petitioner to one of eight wholly-owned subsidiary corporations. All the vessels were built in American shipyards, were American owned, and were documented under the laws of the United States. The vessels registered in the names of the subsidiary corporations were operated by the petitioner under written time charters in some instances, and in others without any formal arrangements. The petitioner advertised all the vessels in the fleet, issued all bills of lading, hired the crews, paid their wages, and transacted the business under its own name. Through stock ownership and identity of officers and directors, the petitioner exercised complete dominion and control of the vessels, collecting the revenues, paying the expenses, and allocating to the subsidiaries by bookkeeping entries whatever Mr. Munson, the petitioner's president, considered as a fair share of the net earnings of the vessels. When any subsidiary declared a dividend the petitioner deposited in the bank account of such subsidiary a sufficient amount to enable it to pay the dividend to the petitioner as sole stockholder on the following day. Thus for practically all purposes the vessels were treated as though owned by the parent corporation. Of the net taxable income for 1920 of the eight subsidiaries, the sum of more than $1,000,000 represented net income from "charter hire" of the eight vessels while operated in foreign trade during that year. In the consolidated return of the petitioner and its affiliates, a deduction of $1,384,738.82 was claimed under section 23 of the Merchant Marine Act of 1920 (46 USCA § 878); the petitioner having during the year invested money in the building of a new vessel as required by that section. The Commissioner allowed the deduction in the amount of only $161,146.33.

This represented the difference between the net earnings in foreign trade of one, and the net loss in foreign trade of the other, of the two vessels documented in the name of the petitioner. The Board sustained the Commissioner's ruling that no deduction was allowable on account of the net earnings in foreign trade of the subsidiaries' vessels. The correctness of this ruling is the first question for decision.

The declared purpose of the Merchant Marine Act of 1920 was to encourage the development and maintenance of an American merchant marine. 46 USCA § 861. Pursuant to that purpose section 23 (46 USCA § 878) offered to the "owner" of a vessel documented in the United States and operated in foreign trade, as an inducement to invest the earnings in additional ships, the allowance of a deduction for the computation of war-profits and excess-profits taxes. The present dispute concerns the meaning of the word "owner" as used in this section. Construed narrowly, as the Commissioner contends it should be, only the subsidiary corporations may be deemed the owners of the vessels respectively documented in their names. Construed broadly, the petitioner may be deemed the owner of the subsidiaries' vessels because of its stock ownership of the subsidiaries and its exercise of dominion over them and their property. That the word "owner" may be given a broad interpretation in order to carry out the legislative purpose is well illustrated by Flink v. Paladini, 279 U. S. 59, 49 S. Ct. 255, 73 L. Ed. 613, where stockholders of a corporation which owned a vessel were held to be within the act limiting the liability of shipowners (46 USCA § 183) in order to save them from the rigors of a California statute which made stockholders liable for corporate obligations. The opinion by Mr. Justice Holmes states the rationale of the decision as follows: "The purpose of the act of Congress was 'to encourage investment by exempting the investor from loss in excess of the fund he

---

in accordance with rules and regulations to be made by the board: *Provided, That such owner shall not be entitled to such deduction unless during such taxable year he invested, or set aside under rules and regulations to be made by the board in a trust fund for investment, in the building in shipyards in the United States of new vessels of a type and kind approved by the board, an amount, to be determined by the Secretary of the Treasury and certified by* him to the board, equivalent to the war-*profits and excess-profits taxes that would have been payable by such owner on account of the net earnings of such vessels but for the deduction allowed under the provisions of this section: Provided further, That at least two-thirds of the cost of any vessel constructed under this paragraph shall be paid for out of the ordinary funds or capital of the person having such vessel constructed."

is willing to risk in the enterprise.' * * * For this purpose no rational distinction can be taken between several persons owning shares in a vessel directly and making the same division by putting the title in a corporation and distributing the corporate stock. The policy of the statutes must extend equally to both. In common speech the stockholders would be called owners, recognizing that their pecuniary interest did not differ substantially from those who held shares in the ship. We are of opinion that the words of the acts must be taken in a broad and popular sense in order not to defeat the manifest intent." Similarly, in Olds & Whipple, Inc., v. Com'r, 75 F.(2d) 272, this court interpreted broadly the phrase "owned by the same interests" and held that a corporation and its stockholders were the same interests for purposes of the statute relating to affiliation.

The petitioner's argument that the broad construction for which it contends is more consonant with the purpose of promoting investment in new American ships seems to us well taken. No reason is apparent, or has been suggested, why Congress should wish to limit its encouragement to corporate shipowners whose vessels were held directly and to exclude a corporation which operated through wholly-owned subsidiaries. Indeed, to treat the parent corporation as owner of the vessels operated through subsidiaries would serve the purpose of the statute better than would a literal interpretation which confines "owner" to the holder of legal title. A corporation operating a single vessel is likely to have to accumulate its earnings over a considerable period before they will suffice to build an additional vessel. The necessary surplus for such investment will be more quickly obtained by a company operating several vessels. This will be equally true whether the operating company has legal title to the vessels or is a holding company operating them through wholly-owned subsidiaries. Hence it would tend to produce a greater investment of earnings in new ships to offer to such parent corporation the encouragement of the deduction allowed by section 23 to vessel owners. An interpretation reaching this result should be adopted if the words used will permit of it. We think they will.

Both parties rely upon section 2 of article I of the Regulations issued by the United States Shipping Board pursuant to section 19 of the act. 46 USCA § 876. This regulation says that "the term 'owner of a vessel' includes a person who has the real ownership of a vessel * * * but persons owning shares in a corporation which own the vessel, have no right, for that reason, to the deduction." The petitioner urges that this declaration in favor of "real ownership" supports its contention; while the Commissioner puts his confidence in the later provision that stock ownership gives no right to the deduction. The Board was of opinion that the regulation supported the Commissioner's position. But even if it be conceded that stock ownership of itself is not enough to bring the parent corporation within the definition of "owner" as construed by the regulation, we are satisfied that stock ownership plus such control as the petitioner here exercised is enough to entitle the petitioner to be considered the real owner of the vessels. The extent of that control has already been recited. It is plain that the parent corporation took possession of the vessels without formal corporate action by the subsidiaries, operated them as it would its own, and retained their earnings, making only a bookkeeping division thereof. Doubtless for the purpose of limiting liability in circumstances where the protection afforded by the limitation act might not be available, the legal title to each vessel was put in a separate corporation; for practically every other purpose the vessels were treated as though owned by the parent. The situation is similar to that involved in Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142, where the court held that there was practical identity between the Central Pacific and the Southern Pacific because of the complete ownership and control which the latter corporation possessed over the former. Thus even in tax cases the separate identity of corporations may be disregarded in exceptional circumstances. See, also, Gulf Oil Corp. v. Lewellyn, 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 133; New Colonial Ice Co. v. Helvering, 292 U. S. 435, 442, 54 S. Ct. 788, 78 L. Ed. 1348. In our opinion to disregard it under the circumstances here disclosed will better carry out the legislative purpose of the statute in question. Accordingly we hold that the petitioner should be deemed the owner of the subsidiaries' vessels within the meaning of section 23.

■ The remaining question is whether in making the deduction permitted by section 23, the earnings of vessels having profits

852

in foreign trade must be reduced by the losses in foreign trade of an unsuccessful vessel. The Commissioner allowed as a deduction only the balance of the net earnings of the petitioner's steamer Walter D. Munson after deducting the losses of its steamer Tuscan. The petitioner contends that the full net earnings of the successful vessels should be deducted. We read the statute as meaning that the owner must take the deduction on the basis of the net earnings of all its vessels engaged in foreign trade and may not restrict itself to those only which made a profit. Although the first clause of the section refers to the "owner of a vessel" and "the net earnings of such vessel," the proviso uses the phrase "net earnings of such vessels." The corporate owner is granted the deduction on condition that it has invested in shipbuilding the amount which would have been payable as taxes but for the deduction. In effect the owner is given the choice of paying war profits and excess profits taxes on "the net earnings of such vessels" or using an equivalent sum in the construction of ships. It seems reasonable that the method employed in computing net income for tax purposes should likewise be applied to the computation of "net earnings" for the purposes of the deduction.

The Board was right in setting off the losses of one vessel against the earnings of another; but it erred in disallowing any deduction on account of the net earnings in foreign trade of the vessels of the petitioner's subsidiary corporations. The order is reversed and the cause remanded for proceedings in conformity with this opinion.