**SNYDER v. WESTOVER, former Collector of Internal Revenue.**

No. 13521–Y.

United States District Court
S. D. California, C. D.

July 21, 1952.

George T. Altman, Beverly Hills, for plaintiff.

Walter S. Binns, U. S. Atty., E. H. Mitchell and Edward R. McHale, Asst. U. S. Attys., Los Angeles, Cal., Eugene Harpole and Frank W. Mahoney, Special Attorneys, Bureau of Internal Revenue, Los Angeles, Cal., for defendant.

YANKWICH, Chief Judge.

### Findings of Fact

**I**

Plaintiff is an individual residing at Sherman Oaks, City of Los Angeles, California.

**II**

Plaintiff is now 59 years of age. In 1928 he separated from his wife, Becky, whom he had married in 1917. They had two children, Bernard and Geraldine. The separation was permanent. In 1945, plaintiff and Becky entered into a property settlement agreement and were divorced.

**III**

Late in 1940 plaintiff, who had been in the used-car business in Denver, moved to Los Angeles, California. There he, together with one Lou Wallace, hereinafter referred to as "Wallace", acquired a corporate charter by purchase and went into the used-car business. The corporation, California Car Company, hereinafter referred to as "the corporation", had been organized in 1939, but had done no business prior to its acquisition by plaintiff and Wallace in 1940.

**IV**

The total investment in the corporation was $2,500. Sixty per cent of the stock was issued to Sam Snyder, twenty per cent to Wallace, and twenty per cent to one Max Mosko. Each 20 per cent was represented by only one share. Plaintiff made his investment in the corporation with his own monies brought by him from Denver, and with additional funds, about $1,500, borrowed by him from Wallace. Wallace also paid for her own stock, but Mosko received his stock without consideration, for qualification purposes. Mosko, a used-car dealer in Denver, remained in Denver and took

no part in the operation of the corporation. The corporation, however, purchased some of its cars from him.

## V

In the early summer of 1942 plaintiff was on a visit to Denver. There he met with his wife, Becky, and his two children. The son, Bernard, was then 19 years of age, and the daughter, Geraldine, 23. Becky stated to him in the presence of his children that she had been advised that, under the law of California and considering the circumstances of their separation, she could take the entire business away from him. She stated, however, that she would not bother him any more if he would take the two children into the business, with a one-fourth interest in each. When plaintiff returned to Los Angeles, he discussed this matter with his attorney and was advised that his wife's statement in regard to the California law was correct, and that he had no alternative but to take the two children into the business as his wife demanded.

## VI

Because of said demands of his wife, plaintiff settled with Wallace for her interest in the corporation and dissolved it on July 31, 1942. He took over its assets and business. On the next day, August 1, 1942, he entered into a written partnership agreement with his two children covering the said assets and business, and at the same time took from his children a power of attorney in respect to the operation of the business. The partnership so formed, hereinafter referred to as "the partnership", also bore the name of California Car Company.

## VII

For the period of seven months begun January 1, 1942, and ended July 31, 1942, the corporation paid plaintiff a salary of $500.00 a month, and Wallace a salary of $250.00 per month. During that period plaintiff did all the buying of cars and also sold cars and directed salesmen. Wallace took care of all the office matters. She signed checks, kept the books, made collections, handled all of the work involving the Motor Vehicle Department, and arranged the financing. During that period both plaintiff and Wallace worked from eight or nine in the morning until ten at night, seven days a week. In July, 1942, plaintiff and Wallace agreed that they should receive bonuses for the seven months' period, $3,000 for plaintiff and $2,000 for Wallace. No formal resolution was adopted, but the amounts of the bonuses were credited on the books to the respective individual accounts of plaintiff and Wallace. The said bonuses were paid in 1942. The corporation kept its books and made its returns on the accrual basis.

## VIII

Among other items, the Commissioner disallowed the corporation's deduction of the said bonuses. The net income of the corporation for the said seven months' period, as recomputed by the Commissioner, but before giving effect to the said disallowance of bonuses, was $3,039.60. As so recomputed also, the capital and surplus of the corporation on July 31, 1942, was $9,864.10. The sales for the said period of seven months totalled $119,666.63.

## IX

After the dissolution of the corporation Wallace continued as an employee of the partnership, on the basis of a salary of $500.00 per month. However, she no longer worked evenings. The partnership agreement entered into August 1, 1942, and referred to in paragraph VI above, was as follows:

"Partnership Agreement

"This Agreement entered into as of August 1st, 1942, is a partnership agreement between Sam Snyder, Bernard Snyder and Geraldine Snyder, with reference to the ownership of that certain automobile business known as California Car Co.

Prior to this date the business of the California Car Co. was owned by Sam Snyder; that he transferred a twenty five per cent (25%) interest in said business to his son, Bernard Snyder and a twenty-five per cent (25%) interest in said business to his daughter, Geraldine Snyder, and the interests of the respective partners in the

California Car Co., as represented by this agreement, are as follows:

"Sam Snyder          Fifty per cent (50%)
"Bernard Snyder       Twenty five per cent (25%)
"Geraldine Snyder     Twenty five per cent (25%)

"It Is Agreed between the parties that Sam Snyder shall be the general manager of the business and adequate books of account shall be kept at the office of the California Car Co., now located at 717 South Vermont Avenue, Los Angeles, California. Said books shall be open to inspection by the other partners at all reasonable times.

"An Accounting of the business shall be made semi-annually or at other times as mutually agreed between the partners, at which time profits may be distributed upon the unanimous agreement of all the partners.

Each partner agrees to maintain public liability and property damage insurance on any of the automobiles that they operate, in order to protect the other partners against any liability resulting from any automobile accident. All such insurance policies are to be left with Sam Snyder at the office of the company. In the event any of the partners fail to take out such insurance, Sam Snyder may place such insurance in effect and charge said partner's interest with the premium thereof.

"A bank account shall be maintained at any bank selected by Sam Snyder, and checks drawn on said bank account shall bear the signature of Sam Snyder or Sam Snyder and either of the other two partners.

"In as much as Bernard Snyder and Geradine Snyder assume no active part in the management of the business, all said management being delegated to Sam Snyder, no salaries shall be drawn by Bernard Snyder or Geraldine Snyder, and Sam Snyder shall draw a salary mutually agreed upon between all the partners. In the event that either Bernard Snyder or Geraldine Snyder, or both, become actively interested in the business, salaries mutually agreeable to all partners shall be paid each of them for services rendered.

"This business shall be operated under the name of 'California Car Co.', a copartnership, and a certificate of fictitious name shall be filed with the County Clerk of the County of Los Angeles, setting forth the partners composing said partnership.

"In the event any partner desires to sell his or her interest in this partnership, he or she must first offer said interest to one of the remaining partners, the consideration for said partnership interest to be on a prorata buy or sell basis.

"It is understood between the partners that the said Bernard Snyder has received his twenty-five per cent (25%) interest in said partnership as a gift from his father, Sam Snyder, said twenty-five per cent (25%) interest being evaluated at the sum of Twenty-five Hundred Dollars ($2500.00) and the said Geraldine Snyder has received her twenty-five per cent (25%) interest in said business as a gift from her father, Sam Snyder, said twenty-five per cent (25%) interest being evaluated at the sum of Twenty-five Hundred Dollars ($2500.00)

"In Witness Whereof the parties have hereunto signed their names this 1st day of August, 1942.

"(signed)  Sam Snyder
           ‾‾‾‾‾‾‾‾‾‾‾‾
           Sam Snyder

"(signed)  Bernard Snyder
           ‾‾‾‾‾‾‾‾‾‾‾‾‾‾
           Bernard Snyder

"(signed)  Geraldine Snyder
           ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
           Geraldine Snyder"

X

The power of attorney executed August 1, 1942, and referred to in paragraph VI, above, was as follows:

"General Power of Attorney

"Know All Men by These Presents: That we, Bernard Snyder and Geraldine Snyder, of Denver, Colorado, in consideration of the confidence we have and repose in our partner, Sam Snyder, of Los Angeles, California, do hereby constitute and appoint the said Sam Snyder our true and lawful agent and attorney-in-fact, for us and in our names, places and stead, to set for and represent us in all and any transactions connected with the partnership business known as the California Car Co., carried on at 717 South Vermont Avenue, Los Angeles, California, fully authorizing and em-

powering the said Sam Snyder to make any purchases he may deem best and proper, and to make any sales he may deem best and proper, to execute any and all deeds, mortgages, releases of liens, sign and deliver any and all necessary instruments in writing required in the transaction of said partnership business, hereby ratifying and confirming any and all acts or things whatsoever done or to be done by our said agent and attorney-in-fact in the premises, and hereby grant unto the said Sam Snyder full authority to do and perform any and all acts or things which we could do or perform if present and acting in person.

"Without limiting the general powers granted hereinabove, we specifically grant to the said Sam Snyder full authority to transact all our ordinary bank business in the City of Los Angeles, with reference to the business of the said California Car Co., to draw checks, endorse checks, promissory notes and bills of exchange for collection or deposit, to borrow from time to time such sums of money and upon such terms as the said Sam Snyder may think advisable or expedient for or in relation to any of the purposes or objects of the business of said California Car Co., and for such purposes to sign promissory notes or bonds as are necessary to effect such borrowings, and for such purposes to give, execute and deliver mortgages with such powers and provisions as he may think proper, to make, sign, execute and deliver to any person or persons from whom—the said Sam Snyder may desire to obtain the loan of any money, any note or mortgage whatsoever to obtain said loan, and to secure the payment thereof.

"In Witness Whereof we have hereunto signed our names this 1st day of August, 1942.

"(signed)  Bernard Snyder
————————————
Bernard Snyder

"(signed)  Geraldine Snyder
————————————
Geraldine Snyder"

"State of Colorado ⎫
               ⎬ SS.
"County of Denver ⎭

"On this *1st* day of *August*, 1942, before me, *J. Thos. Blackburn,* a notary public in and for said County and State, personally appeared Bernard Snyder and Geraldine Snyder, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same.

"Witness my hand and official seal the day and year in this certificate first above written.

"(signed)  J. Thos. Blackburn
————————————
Notary Public in and for the County of Denver, State of Colorado."

### XI

In January, 1943, Geraldine Snyder came from Denver to Los Angeles to live. She worked for a few weeks full time in the business of the partnership but because of the rough character of the salesmen, she discontinued working there during the day and worked only in the evening when her father was present. During the day thereafter she worked at a department store in Los Angeles, but came over to the business of the partnership every evening. The business continued to stay open until ten o'clock each evening, and she performed in the evening many of the same duties that Wallace performed during the day. She had taken a commercial course at high school in Denver, including shorthand, typing, bookkeeping, and general business operations. After leaving high school, she worked for six years at a department store in Denver, holding a training position leading towards the position of buyer. During that period she did marking, pricing, record-keeping, and selling.

### XII

Plaintiff is, and has been, because of lack of education unable to read or write English except that he can sign his name and read large and simple print. During the evenings Geraldine explained the auditor's monthly reports to him, and also discussed with him such questions as the level of operating expenses, including commissions, the size of the inventory, whether loans should be reduced, et cetera.

### XIII

In June, 1944, she invested in the business, as a partner, $1,320.00; and in Febru-

ary, 1945, she invested an additional $700.00. These monies were derived from her salary earnings in Denver and Los Angeles. Geraldine made no withdrawals from the business during that period. She testified that she did not need the money and, therefore, left it in the business. She reported her one-fourth share of the partnership income on returns filed by her and paid the taxes thereon.

## XIV

In February, 1943, Geraldine married one Oscar Weinrich. Oscar Weinrich, however, did not remain in Los Angeles. He was in the navy during the entire war period. Plaintiff's son, Bernard, was in the air force from December, 1942, until the end of the war period. After the war was over, Bernard entered into the partnership business full time. Geraldine at the same time discontinued active part in the business and began to raise a family. At the time of the trial her husband, Oscar Weinrich, was engaged full time in the business, and the amounts paid him were charged to Geraldine's share of the partnership earnings.

## XV

The used-car business which became the business of the partnership was established by plaintiff, and its growth was a result of his efforts while he was still married to Becky Snyder. Said business was developed in California. During the entire period of its development, plaintiff was a resident of California. The money which he brought with him from Denver was commingled by him with other monies borrowed which went into the development of the business. Plaintiff formed the partnership because his wife claimed, and he recognized, the community character of the business and the resulting rights which his wife had in the business. The income derived by plaintiff from the partnership up to April 16, 1945, was the community property of himself and his wife.

## XVI

The corporation filed timely income and excess profits tax returns for the period January 1, 1942, to July 31, 1942. Said returns disclosed an income tax liability of $207.85, but no declared value excess-profits tax liability and no excess profits tax liability. The corporation paid the said amount of $207.85. The Commissioner made certain adjustments including a disallowance of the said bonuses totalling $5,000. Plaintiff waived his right to petition the Tax Court before paying the additional taxes determined. The Commissioner thereupon assessed against plaintiff, as transferee of the corporation, additional corporate taxes as follows:

| | |
|---|---|
| Income tax | $ 596.83 |
| Declared value excess-profits tax | 401.23 |
| Excess profits tax | 3,977.70 |

Against the excess profits tax shown above, the Commissioner allowed a post-war refund credit of 10% thereof, or $397.77. The said additional corporate taxes were paid by plaintiff, together with interest thereon to the date of payment, as follows:

Income and declared value excess-profits taxes

| | |
|---|---|
| December 14, 1948 | $ 881.05 |
| January 10, 1949 | 397.77 |
| January 18, 1949 | 37.12 |

| Excess profits taxes | |
|---|---|
| April 6, 1948 | 1,500.00 |
| June 8, 1948 | 1,700.00 |
| July 12, 1948 | 1,700.00 |
| August 10, 1948 | 196.69 |
| August 10, 1948 | 48.73 |

## XVII

For 1942 and 1943 plaintiff filed timely individual income tax returns. The said returns were separate returns, and not joint returns of plaintiff and his wife. In said returns plaintiff included in gross income one-half of the partnership earnings as his share under the partnership agreement. He did not exclude any portion of said one-half of the partnership earnings, or other income derived by him, as the community share of his wife. For 1944 and 1945 he filed returns on the same basis, except that he excluded one-half of the income derived by him as the community share of his wife. For 1946 he did the same, except that he excluded as the community share of his wife only the sum of $1,365.10. Plaintiff has conceded that the community property character of his income ceased on April 16,

1945, the date when he entered into a property settlement agreement with his wife.

## XVIII

The Commissioner made certain adjustments in the net income of the partnership which the plaintiff has not contested. For 1942 and 1943 he also increased plaintiff's income by assigning to him the one-fourth of the partnership earnings which had been reported by his daughter, Geraldine. He made no exclusion of any part of the income from the partnership, or other income derived by plaintiff, as the community share of plaintiff's wife. For 1944 he likewise assigned to plaintiff the one-fourth of the partnership earnings which had been reported by his daughter, Geraldine, but recognized the plaintiff's exclusion of one-half of the income so determined as the community share of plaintiff's wife. For 1945 he did the same, except that only $^{106}\!/_{365}$ of the income was treated as community income; and the remainder, representing the portion of the year after April 16, 1945, was treated as non-community income. For 1946, he did the same, except that he allowed no community division between plaintiff and his wife. On the basis of these adjustments he determined additional income taxes against plaintiff as individual for the years 1943, 1944, 1945, and 1946.

## XIX

In respect to the additional taxes so determined, plaintiff waived his rights to petition the Tax Court of the United States before payment; and the Commissioner thereupon assessed the taxes computed by him, and in the following amounts:

| | |
|---|---|
| 1943 | $ 9,922.72 |
| 1944 | 5,554.32 |
| 1945 | 11,803.51 |
| 1946 | 3,198.04 |

said amounts being exclusive of interest. Plaintiff paid the said taxes, including interest thereon, as follows:

Taxable year 1943:

| | |
|---|---|
| May 6, 1948 | $1,700.00 |
| August 9, 1948 | 1,454.48 |
| September 9, 1948 | 1,700.00 |
| October 8, 1948 | 1,700.00 |
| November 6, 1948 | 1,700.00 |
| December 6, 1948 | 781.83 |

| | |
|---|---|
| January 13, 1949 | $1,700.00 |
| February 14, 1949 | 1,700.00 |
| March 14, 1949 | 253.19 |

Taxable year 1944:

| | |
|---|---|
| May 17, 1949 | 1,281.40 |
| June 15, 1949 | 1,700.00 |
| July 15, 1949 | 1,700.00 |
| August 15, 1949 | 1,700.00 |
| September 15, 1949 | 652.88 |

Taxable year 1945:

| | |
|---|---|
| September 15, 1949 | 1,047.12 |
| October 21, 1949 | 1,000.00 |
| November 25, 1949 | 1,000.00 |
| December 25, 1949 | 1,000.00 |
| January 25, 1950 | 1,000.00 |

Taxable year 1946:

| | |
|---|---|
| March 14, 1949 | 1,456.81 |
| April 15, 1949 | 1,700.00 |
| May 17, 1949 | 418.60 |

The said payments, except for the $3,000 thereof paid after October, 1949, were paid to Harry C. Westover as Collector of Internal Revenue for the Sixth District of California. The $3,000 paid after October, 1949, was paid to Robert A. Riddell, said Harry C. Westover's successor in office as Collector of Internal Revenue for the Sixth District of California. The above payments, except for the year 1945, represent full payment of the amounts assessed as both tax and interest. The payments in respect to the year 1945 were not completed.

## XX

On March 13, 1950, plaintiff filed with the Collector of Internal Revenue for the Sixth District of California claims for refund of all of the amounts paid as deficiencies, being the amounts paid by him as transferee of the corporation, and also the amounts paid by him as individual. The Commissioner rejected the claims and this suit followed. Of the grounds set forth in the claims, plaintiff waived at the trial all but the following three:

(a) That the Commissioner erred in disallowing to the corporation the bonuses paid in the total amount of $5,000;

(b) That the Commissioner erred in failing to exclude from plaintiff's gross income for 1942 and 1943 one-half thereof as the community share of his wife;

(c) That the Commissioner erred in refusing to recognize Geraldine Snyder as a partner and including her share of the partnership earnings in the income of plaintiff for the years 1942, 1943, part of 1945, and 1946, and in the income of plaintiff and his wife for 1944 and part of 1945.

### Conclusions of Law

#### I

The power of attorney executed on the same day as the partnership agreement, August 1, 1942, gave the plaintiff such control over the business that for tax purposes the partnership did not come into being, except as to Bernard Snyder who was later made an active participant in its affairs.

#### II

Plaintiff's interest in the business of the corporation and the partnership was the community property of himself and his wife Becky, up till the date of their property settlement agreement, April 16, 1945, so that only one-half of the income therefrom for the periods up to that date was includable on plaintiff's separate returns.

#### III

The bonus of $3,000 paid by the corporation to plaintiff, and that of $2,000 paid by the corporation to Lou Wallace, were valid and properly accrued for the period of the corporation ended July 31, 1942.

#### IV

Plaintiff is entitled to a refund of taxes and interest paid as transferee of the California Car Company, a corporation, as follows:

Income and declared value excess-profits taxes, inclusive of interest paid thereon, in the amount of $559.63, together with interest on the said sum as provided by law as follows:

On $124.74 from December 14, 1948;

On $397.77 from January 10, 1949;

On $37.12 from January 18, 1949.

Excess profits taxes, inclusive of interest paid thereon, in the amount of $5,145.42, together with interest on said sum as provided by law as follows:

On $1,500.00 from April 6, 1948;

On $1,700.00 from June 8, 1948;

On $1,700.00 from July 14, 1948;

On $245.42 from August 10, 1948.

From the amounts so computed in respect of excess profits tax, there shall be deducted by way of recovery of post-war refunds the sum of $397.77, plus interest on said amount as provided by law from January 10, 1949.

#### V

Plaintiff is also entitled to a refund of the sum of $12,679.60 paid by him as additional individual income tax and interest in respect to the year 1943, together with interest on said amount as follows:

On $1,700.00 from May 6, 1948;

On $1,454.58 from August 9, 1948;

On $1,700.00 from September 9, 1948;

On $1,700.00 from October 8, 1948;

On $1,700.00 from November 6, 1948;

On $781.83 from December 6, 1948;

On $1,700.00 from January 13, 1949;

On $1,700.00 from February 14, 1949;

On $243.19 from March 14, 1941.