GERALDINE SNYDER WEINRICH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF OSCAR WEINREICH, DECEASED, GERALDINE SNYDER WEINRICH, A.K.A. GERALDINE WEINREICH, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 80375, 80376. Filed November 29, 1961.

*George T. Altman, Esq.*, for the petitioners.
*Thomas F. Greaves, Esq.*, and *Paul G. Wilson, Esq.*, for the respondent.

OPINION.

DRENNEN, *Judge:* Respondent determined deficiencies in the income tax for the year 1945 of Geraldine Snyder Weinrich (hereinafter re-

ferred to as Geraldine) and Oscar Weinrich (hereafter referred to as Oscar), each in the amount of $1,138.54. The only issue in this consolidated proceeding is whether the mitigation provisions of sections 1311–1315 of the Internal Revenue Code of 1954 permit the assessment and collection of these deficiencies which would otherwise be barred by the statute of limitations.

The case was submitted on a stipulation of facts with exhibits attached thereto. The stipulation consisted of statements of certain facts, which are found as stipulated, and an agreement by the parties that this Court may find as facts those relevant matters set forth as findings of fact in *Snyder* v. *Westover*, 107 F. Supp. 363 (S.D. Calif. 1952), and *Snyder* v. *Riddell*, an unreported case (S.D. Calif. 1957, 52 A.F.T.R. 1776, 57–1 U.S.T.C. par. 9547), and the further statement that the stipulation is not intended to be in conflict with but is subject to the following decisions and opinions of the United States Court of Appeals for the Ninth Circuit: *Snyder* v. *Westover*, 217 F. 2d 928 (1954); *Snyder* v. *Riddell*, 252 F.2d 23 (1958); and *Snyder* v. *United States*, 260 F.2d 826 (1958). Inasmuch as the decision in this case rests primarily on the facts found in the above-cited cases and the effect of the judgments and decisions entered therein, reference is hereby made to the opinions in the above cases for more details of the proceedings which form the basis of this controversy. A summary of the facts important to this proceeding follows.

Geraldine and Oscar were husband and wife during the year 1945, residing in Los Angeles, California, a community property State. Geraldine and Oscar each filed on or about March 15, 1946, separate Federal income tax returns for the taxable year 1945 with the collector of internal revenue, Los Angeles, California, and each reported as an item of income therein the amount of $6,212.71, representing one-half of the $12,425.42 which Geraldine received in 1945 as her distributive share of the profits of California Car Company (hereafter referred to as Car Company).

Throughout the year 1945 Car Company was a partnership consisting of Geraldine, her father, Sam Snyder (hereafter referred to as Sam), and her brother, Bernard Snyder (hereafter referred to as Bernard). Sam owned a one-half interest in the partnership and Geraldine and Bernard each owned a one-fourth interest. This partnership was terminated December 31, 1946. A second partnership consisting of Sam and Bernard was in existence during the years 1947, 1948, 1949, and 1950. A third partnership consisting of Geraldine, Sam, and Bernard was formed on January 1, 1951, and was terminated September 30, 1958. Geraldine was not a partner of Sam during any of the years 1947 through 1950 or after September 30, 1958. Oscar was never a partner in any of the above partnerships.

Sam filed a Federal income tax return for the year 1945 on or about March 15, 1946, and he also filed timely individual income tax returns for the years 1943, 1944, and 1946, including therein as gross income one-half of the earnings of Car Company as his share of the partnership earnings under the partnership agreement.[1] Sometime prior to May 6, 1948, respondent determined deficiencies in income tax due from Sam for the years 1943, 1944, 1945, and 1946 on the grounds, *inter alia*, that no valid partnership existed between Sam and Geraldine and that Geraldine's one-fourth share of the partnership income was taxable to Sam for those years. The deficiencies with interest thereon were assessed. Sam paid the assessed amounts for the taxable years 1943, 1944, and 1946 in full to Harry C. Westover, as collector of internal revenue. However, on the deficiency assessed for the taxable year 1945 (which, exclusive of interest, was $11,803.51), Sam paid only the sum of $2,047.12 to Westover and the sum of $3,000 to Robert A. Riddell, as successor in office to Westover. The payments made to Westover for the year 1945 were made in September and October of 1949, and the payments made to Riddell for the year 1945 were made in November and December of 1949 and January of 1950. Payment of the balance of the assessment for 1945 was not completed by Sam.

As a result of the determination that Geraldine's one-fourth share of the net income of the partnership for 1945 was taxable to Sam, on September 1, 1949, respondent voluntarily refunded $1,424.48 to each of Geraldine and Oscar, representing the tax on Geraldine's share of the partnership income which they had reported on their returns, plus interest thereon.[2] Although neither Geraldine nor Oscar at any time applied for the foregoing refunds, each accepted and retained said refunds.

On March 13, 1950, Sam filed claims for refund of the additional taxes he paid for the years 1943, 1944, 1945, and 1946. Respondent disallowed Sam's claims and on September 27, 1951, Sam instituted suits for refund against each of Westover and Riddell in the United States District Court for the Southern District of California. In the suit against Westover (hereafter called the Westover suit), Sam sought refund of all of the additional taxes assessed and paid for the years 1943, 1944, and 1946 and of the $2,047.12 additional tax assessed and paid to Westover for the year 1945. In the suit against Riddell (hereafter referred to as the first Riddell suit), Sam sought a refund of the $3,000 additional tax assessed and paid to Riddell for the year

---

[1] Strictly speaking, for some of these years Sam excluded one-half of this income as the community share of his wife. This fact is not important to this proceeding and for the sake of simplicity we shall refer to Sam's share of Car Company income as though it were all includible in Sam's income.

[2] Geraldine's share of the partnership income was reduced in the deficiency notice here, which accounts for the difference in the amounts refunded and the amounts in controversy here.

1945. One of the grounds relied upon by Sam in these proceedings was that respondent erred in refusing to recognize Geraldine as a partner of Car Company and including her share of the partnership earnings in his income for each of the years involved. These suits were consolidated for trial. Separate judgments were entered, both holding in effect that the partnership income in dispute was taxable to Sam and not to Geraldine. *Snyder* v. *Westover*, 107 F. Supp. 363 (S.D. Calif. 1952). In September 1952 Sam appealed the Westover suit to the United States Court of Appeals for the Ninth Circuit. No appeal was taken in the first Riddell suit and the judgment of the District Court became final.

On December 20, 1954, the Court of Appeals reversed the decision of the District Court, holding that the judgment of the District Court that Geraldine was not a member of the partnership for tax purposes for the years involved was erroneous. *Snyder* v. *Westover*, 217 F. 2d 928 (C.A. 9, 1954). Upon remand the District Court revised its judgment in the Westover suit to conform to the decision of the Court of Appeals and on March 29, 1955, entered judgment ordering a refund to Sam for the years 1943, 1944, and 1946. No refund was ordered for the year 1945 apparently for the reason that Sam admitted, because of other adjustments conceded by him, that he still owed some tax for the year 1945.

In making the refund ordered for the years 1943, 1944, and 1946, respondent by "Notice of Adjustment" dated December 6, 1955, credited against the judgment and withheld the sum of $11,580.35, representing the unpaid balance of the additional tax assessed for the year 1945 plus interest. On March 26, 1956, Sam filed a claim for refund of $10,715.10 for the year 1945, being the amount of $11,580.35 less $865.25 which Sam admitted was still due on his 1945 income tax liability. The ground for the claim was that the deficiency resulted from the erroneous inclusion of Geraldine's partnership income in Sam's income. When the claim for refund was not paid, Sam brought suit (hereinafter referred to as the second Riddell suit) in the District Court against Riddell for recovery of the above amount. The District Court held that each tax year constitutes a separate cause of action and Sam, having failed to appeal the first Riddell suit, was barred by res adjudicata from seeking a refund of income taxes for the year 1945 on the same ground relied upon in the first Riddell suit and that he could not collaterally attack the judgment on the merits of the prior action, and on April 1, 1957, dismissed the suit. *Snyder* v. *Riddell*, an unreported case (S.D. Calif. 1957, 52 A.F.T.R. 1776, 57–1 U.S.T.C. par. 9547). On appeal of the second Riddell suit the Court of Appeals for the Ninth Circuit, in a decision filed on January 27, 1958, again reversed the

District Court, holding that the first Riddell suit was not res adjudicata of Sam's claim in the present proceeding for the reason that the balance of the assessment for 1945 not having been paid at the time of the first Riddell suit Sam's present claim did not then exist and could not have been sued upon. *Snyder* v. *Riddell*, 252 F. 2d 23.[3] On remand of the second Riddell suit the District Court, on January 13, 1959, ordered a refund of the $10,715.10 in controversy in that proceeding for the year 1945.[4]

The statutory notices of deficiency in this proceeding were sent to Geraldine and Oscar by registered mail on April 27, 1959.

Assessment and collection of the deficiencies here involved are admittedly barred by the statute of limitations unless they qualify as "adjustments" timely made under the mitigation provisions of sections 1311–1315 of the 1954 Code, the pertinent parts of which are set forth in the margin.[5] These provisions, constituting an excep-

---

[3] The Court of Appeals in the second Riddell suit noted that the propriety of a refund suit before the whole tax for a given year is paid was then pending before the Supreme Court, referring to *Flora* v. *United States*, 246 F. 2d 929 (C.A. 10, 1957). The parties do not suggest here that the courts in the Westover and Riddell suits did not have jurisdiction for the year 1945. Cf. *Flora* v. *United States*, 362 U.S. 145 (1960).

[4] A third suit involving Sam's efforts to collect interest on part of his refund for the year 1943 was decided in Sam's favor, *Snyder* v. *United States*, 260 F. 2d 826 (C.A. 9, 1958), but is not important to a decision in this case except for further background information.

[5] SEC. 1311. CORRECTION OF ERROR.

(a) GENERAL RULE.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, * * * then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) CONDITIONS NECESSARY FOR ADJUSTMENT.—

(1) MAINTENANCE OF AN INCONSISTENT POSITION.—Except in cases described in paragraphs (3)(B) and (4) of section 1312, an adjustment shall be made under this part only if—

* * * * * * *

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position * * * maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

* * * * * * *

(3) EXISTENCE OF RELATIONSHIP.—In case the amount of the adjustment would be assessed and collected in the same manner as a deficiency (except for cases described in section 1312(3)(B)), the adjustment shall not be made with respect to a related taxpayer unless he stands in such relationship to the taxpayer at the time the latter first maintains the inconsistent position in a return, claim for refund, or petition (or amended petition) to the Tax Court of the United States for the taxable year with respect to which the determination is made, or if such position is not so maintained, then at the time of the determination.

SEC. 1312. CIRCUMSTANCES OF ADJUSTMENT.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

* * * * * * *

(3) DOUBLE EXCLUSION OF AN ITEM OF GROSS INCOME.—

(A) Items Included in Income.—The determination requires the exclusion from

tion to the statute of limitations, must be affirmatively pleaded and proved by the party relying thereon, when, as here, the statute of limitations is relied on as a bar to assessment of the deficiency. *J. C. Bradford*, 34 T.C. 1051 (1960), and cases cited therein.

Respondent pleads and relies on section 1312(3)(A) as providing the circumstances under which the adjustment is authorized in this case, claiming that the decision of the Court of Appeals filed on January 27, 1958, in the second Riddell suit was a "determination" defined in section 1313(a)(1) requiring the exclusion from Sam's income for 1945 of an item (Geraldine's share of the partnership income for that year) with respect to which tax was paid by Sam [6] and which was erroneously excluded from the gross income of Geraldine, a related taxpayer.

The provisions of sections 1311–1315 applicable here provide in summary that if there is a determination described in section 1312, and on the date of such determination correction of the effect of the error therein described is barred by operation of law, then the error can be corrected by an adjustment made in the manner specified in section 1314. Section 1311(b) provides that the adjustment, if assessable under section 1314 as a deficiency, as here, may be made only if the determination adopts a position maintained by the taxpayer with respect to whom the determination is made which is inconsistent with the erroneous exclusion relied on in section 1312, which in this instance would be the exclusion from gross income of Sam of an item

---

gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer; * * *

\* \* \* \* \* \* \* \*

SEC. 1313. DEFINITIONS.

(a) DETERMINATION.—For purposes of this part, the term "determination" means—

(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

\* \* \* \* \* \* \* \*

(c) RELATED TAXPAYER.—For purposes of this part, the term "related taxpayer" means a taxpayer who, with the taxpayer with respect to whom a determination is made, stood, in the taxable year with respect to which the erroneous inclusion, exclusion, omission, allowance, or disallowance was made, in one of the following relationships:

\* \* \* \* \* \* \* \*

(6) partner, * * *

SEC. 1314. AMOUNT AND METHOD OF ADJUSTMENT.

(b) METHOD OF ADJUSTMENT.—The adjustment authorized in section 1311(a) shall be made by assessing and collecting, or refunding or crediting, the amount thereof, in the same manner as if it were a deficiency determined by the Secretary or his delegate with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year or years. * * *

[6] No question is raised whether the withholding of a part of the refund due Sam for other years and applying it to the unpaid balance of tax assessed for 1945 constitutes a payment of tax with respect to such item by Sam within the meaning of section 1312(3)(A).

of income which was erroneously excluded from the gross income of Geraldine and Oscar. A "determination" is defined as a decision of the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final. A related taxpayer is one with whom the taxpayer stood, in the year with respect to which the error was made, in one of several prescribed relationships, the only pertinent one here being "partner"; and the adjustment shall not be made with respect to the related taxpayer unless he was so related to the taxpayer at the time the latter first maintained the inconsistent position in a return or claim for refund, or at the time of the determination. And finally, the adjustment, if authorized, shall be made by assessing the amount thereof as if it were a deficiency and as if on the date of the determination 1 year remained before the expiration of the period of limitation on the assessment of such deficiency.

With respect to Geraldine, it appears that all of the requirements to make the mitigation provisions applicable are met if the notice of deficiency here involved was sent to her within the time allowed under section 1314 after the applicable "determination" was made, and if she was a related taxpayer to Sam at the time he first maintained a position inconsistent with the exclusion of Geraldine's share of the partnership income from her taxable income for the year 1945. A "determination," or order of a court of competent jurisdiction which became final, required the exclusion from Sam's income of Geraldine's share of the partnership income for the year 1945, that determination adopted a position maintained by Sam which was inconsistent with the exclusion of that income from Geraldine's taxable income for the year 1945, and Geraldine was a partner of Sam during the year with respect to which the determination was made.

Petitioner claims, however, that the applicable "determination" was the decision of the Court of Appeals in the Westover suit which was entered on December 20, 1954, and became final on March 20, 1955, so that the notice of deficiency sent to Geraldine was too late. On the other hand, respondent claims the "determination" was the decision of the Court of Appeals in the second Riddell suit filed on January 27, 1958. We disagree with both parties. In our opinion, the determination which might authorize the adjustment here was the judgment decree of the District Court on remand in the second Riddell suit which ordered a refund to Sam of the $10,715.10 claimed by Sam to have been overpaid on his 1945 income tax because of the erroneous inclusion in his income of Geraldine's share of the partnership income.

At the outset, we observe that the provisions of the Code relating to mitigation of the statute of limitations are to be interpreted in a manner to effectuate the apparent legislative purpose in enacting them. See *United States* v. *Rosenberger,* 235 F. 2d 69 (C.A. 8, 1956).

Furthermore, we recognize that the mitigation provisions were based upon the principle that corrective adjustments are not to impair the essential function of the statute of limitations except in those instances where the parties in whose favor it applies "shall have justified such modification by active inconsistency." S. Rept. No. 1567, 75th Cong., 3d Sess., pp. 48, 49 (1939), 1939–1 C.B. (Part 2) 779.

First, with respect to respondent's contention, it seems clear that the appellate court in the second Riddell suit simply held that Sam was not prevented from prosecuting his claim for refund of the balance of the assessment for the year 1945 because he had failed to appeal the first Riddell suit, and remanded the case to the District Court for such proceedings as it deemed necessary. The decision of the Court of Appeals did not pass on the merits of Sam's claim, nor did it require the exclusion of the item from Sam's income. The final judgment or "determination" requiring the exclusion of the item from Sam's income was the judgment of the District Court ordering the refund.

Turning to petitioners' contention, we have more difficulty. The decision of the Court of Appeals in the Westover suit comes within the definition of a "determination" and it decided the principle which might ultimately be the basis for excluding the item from Sam's income. But though this decision might have been relied on in a proper action by Sam to require exclusion of the item from his income, see *Snyder* v. *United States*, 260 F. 2d 826 (C.A. 9, 1958), and *Rigdon* v. *United States*, 197 F. Supp. 150 (S.D. Calif. 1961), it did not actually require the exclusion of Geraldine's share of the partnership income from Sam's income for the year 1945, which the statute seems to require. Sec. 1312(3) (A). This is obvious from the judgment entered by the District Court on remand of the Westover suit which, despite the decision of the principle in Sam's favor, did not order a refund to Sam of the additional tax paid to Westover for the year 1945. This appears to have been because other adjustments in Sam's income for 1945 produced more tax than the additional tax Sam paid to Westover for that year. It thus appears unlikely that either court in the Westover suit could have entered a judgment, decree, or order requiring the exclusion of Geraldine's share of the partnership income from Sam's income for the year 1945. See opinion of the Court of Appeals in the second Riddell suit, 252 F. 2d 23.

At the conclusion of the Westover suit respondent did not know whether the additional assessment resulting from the inclusion of Geraldine's share of the partnership income in Sam's income would be paid, and if paid, whether Sam would attempt to recover it. Cf. *Daniel M. Cory*, 29 T.C. 903 (1958), affd. 261 F. 2d 702 (C.A. 2,

1958), certiorari denied 359 U.S. 966 (1959). Sam had not appealed the first Riddell suit which had decided the partnership issue against him. At that time it was too late for Sam to question the validity of the balance of the assessment for 1945 without first paying the tax. It was also too late for respondent to sue petitioners for the tax erroneously refunded to them without reliance upon some mitigation provision. There had been no determination or final order of any court requiring that this item be excluded from Sam's income for the year 1945. The Court of Appeals in the second Riddell suit held that the cause of action in the first Riddell suit related solely to the question of overpayment of the installments then in question, and by inference the same would be true with respect to the Westover suit. We must take this holding of the Court of Appeals as we find it. Consequently, in our opinion, there was no judgment, decree, or other order of any court of competent jurisdiction, which had become final, which required the exclusion of the item from Sam's income for 1945 until the order entered by the District Court on remand in the second Riddell suit became final. But cf. *H. T. Hackney Co.* v. *United States*, 111 Ct. Cl. 664, 78 F. Supp. 101 (1948). This being so, the notices of deficiency giving rise to this proceeding were timely.

Petitioners' second contention is that neither Geraldine nor Oscar was a related taxpayer with respect to Sam at the time Sam first maintained the inconsistent position adopted in the determination. They base this contention on the fact that Geraldine, Oscar, and Sam all took consistent positions with respect to this item in their returns for the year 1945 and there was no inconsistency in treatment of the item until either respondent refunded part of their 1945 tax to Geraldine and Oscar in 1949 or Sam filed his claims for refund in 1950, at both of which times neither Geraldine nor Oscar was a partner or otherwise a "related taxpayer" with respect to Sam.

With respect to Oscar, it is clear that Oscar was never a "related taxpayer" to Sam as defined in section 1313(c). Respondent argues that this makes no difference because the mitigation provisions are concerned only with an item of income erroneously excluded from the gross income of Geraldine and Oscar and inasmuch as California is a community property State, Oscar and Geraldine are equally liable for the tax deficiency. The short answer to this seems to be that section 1312 provides the circumstances under which the adjustments provided in section 1311 are authorized and the circumstance relied on by respondent, contained in section 1312(3)(A), is that the necessary determination requires the exclusion of an item of income from the income of the taxpayer which was erroneously excluded from the gross income of a related taxpayer, and inasmuch as Oscar was

not a partner but was simply required to report one-half of Geraldine's share of the partnership income because it was community income, the exclusion of this part of the income from Oscar's income by virtue of the refund made to him would not be the erroneous exclusion of that item from the income of a related taxpayer. Furthermore, we think it is clear that the mitigation provisions were intended to apply only to the taxpayer with respect to whom the determination was made or a "related taxpayer" as therein defined. Consequently, we hold that the mitigation provisions do not permit the assessment and collection of the deficiency against Oscar or his estate.

Turning to Geraldine, she was admittedly a related taxpayer in the year 1945 with respect to which the determination was made. In his return for the year 1945 Sam took the position that Geraldine's share of the partnership income was taxable to her and not to him, and this was the first time he maintained a position inconsistent with the exclusion of this item of income from Geraldine's income. When respondent made a refund of the tax to Geraldine and Oscar in 1949, Sam's position taken in his return for 1945 was inconsistent with the treatment by respondent of this item in Geraldine's income. We find nothing in the statute which requires that for purposes of determining the requisite relationship at the time set forth in section 1311(b)(3) the error (erroneous exclusion from Geraldine's income) must precede the maintenance of a position by a taxpayer which is inconsistent with such error. The terms of the statute require only that the determination adopted a position maintained by the taxpayer with respect to whom the determination is made, inconsistent with the erroneous exclusion of the item in the income of a related taxpayer, *Cory* v. *Commissioner*, 261 F. 2d 702 (C.A. 2, 1958), affirming 29 T.C. 903 (1958), certiorari denied 359 U.S. 966 (1959), and that the related taxpayer stands in such relationship to the taxpayer with respect to whom the determination is made at the time the latter first maintained the inconsistent position. Cf. *Rigdon* v. *United States*, *supra*. Nor does it make any difference that the error was made by respondent rather than by the related taxpayer. *Albert W. Priest Trust*, 6 T.C. 221 (1946). We think the acceptance of the refund by Geraldine here, when she knew that Sam had taken a position with respect to the item of income which gave rise to her refund which was inconsistent with the refund to her, was tantamount to an active exploitation of the statute of limitations and created the type of mitigating circumstance from which the statute, both in its wording and purpose, permits an adjustment to correct the error which would otherwise go uncorrected by reason of the statute of limitations. *Ross* v. *United States*, 148 F. Supp. 330 (D. Mass. 1957).

We hold that sections 1311–1315 permit the proposed adjustment to Geraldine's income tax for the year 1945 and that the adjustment was timely made by respondent.

Reviewed by the Court.

*Decision will be entered for the respondent in Docket No. 80375.*
*Decision will be entered for the petitioner in Docket No. 80376.*

RAUM, *J.*, dissenting: I cannot agree with that portion of the majority opinion holding that the mitigation provisions are inapplicable to Oscar. I think that the same considerations relating to Geraldine similarly call for approving the adjustment with respect to Oscar. The only possible argument to the contrary would be the contention that Oscar was not a "partner" and therefore not a "related taxpayer" as defined in section 1313(c). However, I think that Oscar was a "partner" and a "related taxpayer" within the meaning of these provisions.

Words may have different meanings in different contexts, even within the same statute, cf. *Helvering* v. *Stockholms &c. Bank*, 293 U.S. 84, 86–88; *Helvering* v. *Morgans*, 293 U.S. 121, 128; *Sax Rohmer* v. *Commissioner*, 153 F. 2d 61, 65 (C.A. 2), and the problem before the Court must always be to interpret the language in the particular provisions involved. Moreover, in the present case the question must be examined in the light of the further consideration that the mitigation provisions are to be interpreted so as to effectuate the apparent legislative purpose, not "strictly or narrowly * * * as to defeat its apparent purpose." *United States* v. *Rosenberger*, 235 F. 2d 69, 73 (C.A. 8). Plainly, the legislative purpose here calling for the application of the mitigation provisions is every bit as applicable to Oscar as it is to Geraldine. And keeping this purpose in mind it seems clear that Oscar can fairly be regarded as a "partner" and "related taxpayer" within the meaning of the statute.

By reason of the operation of the community property laws the income ascribed to Oscar is *partnership* income. It is one-eighth of the total partnership income and is chargeable to him whether distributed or not. Indeed, if the partnership had a fiscal year accounting period, he would be chargeable in his calendar year with a one-eighth share of distributive partnership income for the fiscal year ending within his calendar year, regardless of whether he received or became entitled to his one-eighth in that calendar year. That result is possible, and indeed is required, only because, under

the Internal Revenue Code, the income involved is partnership income. Oscar is taxed on *partnership* income in the manner of a partner under the revenue laws and he is a "partner" within the meaning of section 1313(c). To give the statute a different interpretation would be to frustrate its purpose. Compare *Munson Steamship Line* v. *Commissioner*, 77 F. 2d 849 (C.A. 2), where the term "owner" of a vessel was interpreted to include a parent corporation in a situation where subsidiaries really owned the vessels but where the court felt that such interpretation was appropriate "in order to carry out the legislative purpose." 77 F. 2d at 850.

In the peculiar situation before us it does not do violence to the Code to consider Oscar a "partner" within the special purposes for which these provisions were designed; such an interpretation is, to the contrary, strongly called for by the relevant legislative purpose. Indeed, if the statute were interpreted otherwise, one-eighth of the partnership income would be wholly outside the operative scope of the mitigation provisions; I think that no such bizarre result was ever contemplated by Congress.

TURNER, OPPER, BRUCE, WITHEY, PIERCE, and MULRONEY, *JJ.*, agree with this dissent.