106 F.Supp. 384 (1952)
BAUMAN
v.
UNITED STATES.
ROSENBERGER
v.
UNITED STATES.
Nos. 8264(2), 8265(2).
United States District Court E. D. Missouri, E. D.
July 28, 1952.
*385 Lowenhaupt, Waite, Chasnoff & Stolar, H. M. Stolar and Norman Begeman, all of St. Louis, Mo., for plaintiff.
George L. Robertson, U. S. Atty., and Allan McD. Goodloe, Asst. U. S. Atty., both of St. Louis, Mo., for defendant.
HULEN, District Judge.
The question for ruling is whether yearly payments received by plaintiffs between 1932 and 1942, totaling $25,227.94, from a corporation, organized to hold real estate for the stockholders, were liquidating dividends to be applied in adjusting cost basis of securities issued by the corporation on a final or partial liquidation of the paying corporation, or income which plaintiffs should have reported as such for the years received. Two cases are consolidated because the facts of the two are the same.
In 1917 plaintiffs, as nieces of Al Hayman, each received an equal 1/14 share along with the other heirs of his estate. The estate consisted principally of improved real estate in New York City. One of the 14 owners desired to reduce his share to money. To satisfy the request without selling the real estate on what was considered a depressed market, the remaining 13 joint owners in 1932 formed a syndicate to borrow the funds necessary to purchase the 1/14 interest.
In a ruling of the Tax Court,[1] on other tax questions, it was found:
"The primary purpose of the syndicate agreement was to provide for the ownership and operation of the property by a corporation until it could be sold and in the meantime to distribute all surplus earnings and profits, except for the reserve for contingencies, to the syndicate members." 1432 Broadway Corporation v. C. I. T., 4 T.C. 1158, 1160, affirmed, 2 Cir., 160 F.2d 885.
The 1432 Broadway Corporation was formed in 1932. The syndicate managers then conveyed the estate property consisting of real estate and some cash on hand, of the 13 owners, to the corporation. The corporation had capital stock of 390 no par shares. The plaintiffs each received 30 shares as her 1/13 interest. One dollar per share was assigned as the cost basis to the stockholders. All of the stock was assigned to the former syndicate managers as voting trustees. Instruments titled "debenture notes," of face value of $1,170,000, bearing 7% interest, were also issued by the corporation to the 13 owners of the property received by the corporation, in exact ratio to their interests. Plaintiffs each received $90,000 of such "debenture notes" as her 1/13 interest.
No question is presented as to cost basis of the real estate to the corporation of $1,430,390. The Tax Court has passed on that figure. Neither is the cost basis of the "debenture notes" to the 13 owners before the Court. Defendant has determined that fact and plaintiffs have agreed to it.
The corporation operated the real estate from 1932 to 1946. Rents were collected, from which there was a net profit. Out of such earnings, distributions were made to each stock and "debenture note" holder. Plaintiffs each received 1/13 of such distributions, which were as follows:

 1932 $2,000.00
 1933 1,500.00
 1935 8,027.94

*386
 1936 1,200.00
 1937 2,000.00
 1938 1,000.00
 1940 4,500.00
 1941 3,000.00
 1942 2,000.00
 __________
 Total $25,227.94

The corporation through its directors designated these distributions as pro rata reductions of the principal of the "debenture notes." Such payments were indorsed on the "debenture notes" by the corporation which advised its stockholders that the payments were a distribution of principal. Neither plaintiff reported any of such payments on her income tax return for any year.
It has been determined by the Tax Court, and affirmed by the Court of Appeals, that the "debenture notes" did not represent any loans to the corporation, but that the original conveyance of the 13 stockholders to the corporation of all the corporate assets constituted contributions of capital. The Tax Court held the proper term to apply to the "debenture notes" was preferred stock.
In 1943 the real estate was sold. The sale was consummated in 1946. Liquidating dividends were paid in 1946 and 1947 to the 13 shareholders. In 1946, Mrs. Bauman and Mrs. Rosenberger each received distributions of cash and notes having a total value of $24,772.06.
Plaintiffs reported this final distribution in the year 1946 as the sale of a capital asset using as a cost basis the original agreed cost of the preferred stock ("debenture notes") reduced by the distributions received in the years 1932 through 1942. The cost basis of this preferred stock was completely recovered by the taxpayers in the year 1946. The distribution for the year 1947 was reported entirely as the receipt of a sale of a capital asset. In each of these years plaintiffs reported as income 50% of the amount of capital gain.
The plaintiffs thereafter took the position the payments from 1932 through 1942 were taxable dividends and did not properly or legally reduce the cost basis of the capital stock. Claims for refund were then filed. The basis of the claims was that the distributions received in the years 1932 through 1942 were properly reportable as taxable dividends and did not reduce the cost basis of the preferred stock. The Commissioner disallowed these claims and held the plaintiffs had properly reported the distributions in prior years as reductions in principal of the preferred stock, and that the returns, as filed for the years 1946 and 1947, correctly reported the transaction.
Plaintiff Corinne Bauman by this suit seeks a refund of $2,918.87 for the year 1946, and $3,331.58 for the year 1947, on the theory the 1932 to 1942 payments were taxable dividends. Erma Rosenberger seeks $2,255.02 for the year 1947. Her claim for refund for the year 1946 was not timely filed.
Plaintiffs state their case:
"(1) That the transfer of the real estate and cash to the 1432 Broadway Corporation did not constitute a loan but a contribution of capital; (2) that the `debenture notes' were not evidence of indebtedness but were preferred stock; (3) that since the distributions from 1932 to 1942 to the stockholders were pro rata and were from earnings and profits, such distributions were dividends under Section 115(a) and (b) of the Internal Revenue Code [26 U.S.C.A. § 115(a, b)]; (4) that plaintiffs' cost bases should not have been adjusted in their returns of income for the years of 1946 and 1947, by the deduction of dividend distributions for the years 1932 to 1943."
Defendant answers:
"A corporate distribution out of surplus accumulated after February 28, 1913, is not necessarily a dividend. Section 115(c) of the Internal Revenue Code provides that distributions in full or partial liquidation shall be treated as full or partial payment in exchange for stock. This is true whether or not (1) the distribution is paid out of accumulated surplus; or (2) the corporation is not immediately dissolved. *387 In each case the facts determine whether there was in fact a distribution in liquidation, and, although there is no fixed test to apply, the intention of the parties, particularly the corporation, is persuasive."
By amended answer defendant pleads estoppel based on representation by plaintiffs that the 1932 to 1942 payments were reductions of principal and not taxable income because plaintiffs failed to report the distributions as income, and in reliance on such representation the Commissioner did not for such years make an additional assessment.
Two cases cited by defendant from this Circuit, Tate v. C. I. T., 8 Cir., 97 F.2d 658, and Tootle v. C. I. T., 8 Cir., 58 F.2d 576, 580, call for consideration. While the intention of the parties is a fact to be considered in determining the character of a corporate distribution and, as defendant states, is persuasive, the final test is stated in the Tootle case:
"Such character must be gathered from what was actually done."
In the Tootle case the taxpayer was claiming that distributions were dividends, or a payment from surplus and profits, and not a liquidating dividend. Looking to the facts, the Court found:
"The first is that the dividend was, as a matter of fact, not paid and could not have been paid from surplus and/or earnings. At the time this dividend was declared, the entire property of the corporation had been sold, under authorization of the stockholders, except the cash on hand and a claim for tax refund."
In the Tootle case the facts prevailed over the claimed intention of the corporation.
In the Tate [97 F.2d 660] case it is said:
"Whether a dividend is a `distribution in liquidation' is a question of fact, and depends upon the intent of the directors of the corporation."
We conclude the above quotation from the Tate case must refer to the facts and acts of the corporation that give rise to the payment, rather than the designation placed on the ultimate payment by the corporate officers. We find this expression in the Tate case:
"Nevertheless, in view of all of the circumstances, we can not say as a matter of law that the Board of Tax Appeals should have found that the 1928 dividend was a distribution in liquidation."
And again:
"Obviously this dividend was not a complete liquidation of the corporation. It could be a partial liquidation only if one of a series of distributions in complete redemption of stock. The only evidence in the record that this distribution was of such a nature is (1) the designation given it by the board of directors and (2) the unusual size of the dividend. * * * What a corporation may call a distribution of profits or surplus is not necessarily controlling." (Emphasis added.)
The Tootle and Tate cases, and others of similar import, lead us to the conclusion that the character of the 1932 to 1942 payments received by plaintiffs must be determined by all the facts and circumstances in the case.
The Tax Court has made res judicata the fact that neither plaintiffs nor any of the 13 heirs made loans to the 1432 Broadway Corporation. The act of the corporation in labeling the instruments issued "debenture notes" was a misnomer. The thirteen heirs of Al Hayman held certificates of ownership of a 1/13 interest in the assets of the corporation at its inception. There is no dispute the payments to plaintiffs in the years 1932 to 1942 came out of profits realized from rentals on the real estate the thirteen owners had conveyed to the corporation. It follows that had the thirteen heirs held the real estate and formed no corporation, they would have received the same income. In each case, after the last payment in 1942, they still held their 1/13 interest in the property as originally conveyed to the corporation. We conclude it was a distribution of dividends equally, according to ownership, to the stockholders out of the earnings *388 or profits, and comes under Section 115(a) of the Internal Revenue Act.
There is some comment in the Tax Court opinion indicating the corporation was engaged in a tax evasion scheme in its original labeling of the distributions. There is no evidence either plaintiff was a party to any such scheme. Said the Tax Court:
"We therefore bypass the examination of the legalistic craftsmanship of the debentures which the taxpayer invites and go directly to the circumstances to determine whether, notwithstanding their form, the substance of the transaction which they purport to evidence was in actuality a loan or indebtedness and whether the substance of the accrual sought to be deducted is in reality interest."
The record reveals no evidence of intent on the part of the thirteen owners of the property to liquidate at any fixed time. It was a condition that no sale was to be made until at least $1,200,000 could be realized. But the Tax Court has found that one of the purposes of the syndicate or corporation was to "distribute all surplus earnings and profits" until the property could be sold. In so far as this record shows, there was no consideration given to a sale during the period when the payments, 1932 to 1942, were being made. Here is the Tax Court's observation on that subject:
"The duration of the corporation was to be perpetual and its purposes were, among other things, to acquire 1428-1432 Broadway and 116-132 West 40th Street; to maintain, operate, and develop such property, and any property for which it might be exchanged; to borrow money; and to issue its own shares and debentures for the acquisition of such real property."
The property might have been held for years. The thirteen owners were free to engage in any adventure they could agree upon. There was no agreement requiring a sale at any time or under any circumstances. Defendant cannot, under that record, stand on the sale in 1943 and look back and declare all the payments out of profits from 1932 to 1942 were made in contemplation of a sale and liquidation and therefore liquidating dividends.
At the end of any one of the taxable years 1932 to 1942, after payment of the dividends, the plaintiffs had the same stock or security ownership in the corporation as at the beginning of the year. The same is true as of the end of 1942 as compared with the beginning of 1932. Assuming the real estate retained the same value, the stock or security holdings would be of the same value during and at the end of such period. Its business activities were the same. Had the directors labeled the distribution a dividend it would have had the same effect on the corporate affairs and balance sheet. The corporation, under ruling of the Tax Court, paid a tax on the amounts distributed as income. 1432 Broadway Corp. v. C. I. T., 4 T.C. 1158. Therefore it did not benefit the corporation to call it a liquidation dividend. It did benefit the plaintiffs by reason of their failure to report the income on their tax returns. The error of casting the distributions as interest on debentures was made known to plaintiffs in 1945 when the Tax Court held that no loans had been made to the corporation and that the "debenture notes" were in fact preferred stock. Subsection C of Section 115 of the Code does not apply.
Defendant finds it difficult to reconcile its position in this case, that the payments were liquidating dividends on interest on the "debenture notes," with its position before the Tax Court, where it successfully asserted the "debenture notes" were not evidence of loans, and interest on them was not a deductible item by the corporation. This Court does not look favorably on a paradoxical holding, urged by defendant, that the payments are subject to one classification in taxing the corporation but a different classification to fix plaintiffs' tax. Uniformity should be achieved if within the power of the Court. Such should be defendant's objective.
Estoppel has been asserted by an amendment to the pleadings after trial. The defendant does not brief the point. *389 Other than filing a tax return omitting the income, plaintiffs made no representation. The record is silent as to the extent, if any, to which the Commissioner relied on the tax returns. We think the ruling of the Court of Appeals of this Circuit in Crossett Lumber v. United States, 8 Cir., 87 F.2d 930, 931, applies:
"The appellee in this case pleaded estoppel. By so doing it drew upon itself the burden of establishing affirmatively the facts in support thereof. * * * Whether the statement in the claim was such that the Commissioner was justified in relying on the same need not be determined. There is no statement in the stipulation of fact to the effect that in reliance upon such representation the Commissioner failed to take action to recover the erroneous refund. The reason of his inaction is left purely to conjecture. `One who pleads an estoppel in pais must be able to show among other things that he relied on the conduct of the person against whom he is urging the estoppel.' * * * The Government in this case therefore failed affirmatively to show one of the necessary elements of estoppel."
Plaintiffs owe defendant a tax accounting for the dividends received 1932 to 1942. There is no controversy as to the amount of plaintiffs' claims being correct, if their theory of the law and facts is correct  and we hold it is. There should be offset against plaintiffs' claims the tax plaintiffs owe to defendant on the 1932 to 1942 payments. While defendant has not set up any such claim, we will give it an opportunity to do so, otherwise their claim may be barred under the rule on compulsory counterclaims. By brief plaintiffs admit the collectibility of this tax obligation under Section 3801(b) (5), Internal Revenue Code, 26 U.S.C.A. § 3801 (b) (5). Claims between the parties should be settled in one suit.

Preliminary Order
Defendant granted thirty days to file amended pleading setting up amount due defendant on 1932 to 1942 dividend payments received as income; failing to file such amended pleading plaintiffs may submit form for judgment on its theory of defendant's liability.
If defendant elects to file such amended answer and counterclaim, submission of cause will be vacated to permit proof, only of such claim based on 1932 to 1942 income of plaintiffs.
NOTES
[1] This case ruled adversely on a claim of the corporation that amounts accrued by the corporation as interest on debentures were deductible as interest. Decided April 30, 1945.