UNITED STATES of America,
Appellant,

v.

Erma ROSENBERGER, Appellee.

No. 15522.

United States Court of Appeals
Eighth Circuit.

Aug. 15, 1956.

Marvin W. Weinstein, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., Harry Richards, U. S. Atty., and W. Francis Murrell, Asst. U. S. Atty., St. Louis, Mo., were with him on the brief), for appellant.

Edwin Grossman, St. Louis, Mo. (Norman Begeman, St. Louis, Mo., was with him on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The question for review in this action is whether the taxpayer (appellee) was entitled, by reason of Section 3801 of the Internal Revenue Code of 1939,[1] to a refund of an overpayment of income

1. "§ 3801. Mitigation of effect of limitation and other provisions in income tax cases
  "(a) Definitions.
  "For the purpose of this section—
  "(1) Determination.

"The term 'determination under the income tax laws' means—
  *   *   *   *   *   *
  "(B) A decision by the Tax Court of the United States or a judgment, decree,

tax for the year 1946, otherwise barred by the applicable statutes of limitations, Section 3772(a) (1) and Section 322(b) (1) of the Internal Revenue Code of 1939, 26 U.S.C. §§ 3772(a) (1), 322(b) (1). From a judgment for the taxpayer, the Government has appealed. The facts are not in dispute.

or other order by any court of competent jurisdiction, which has become final;

\* \* \*

\* \* \* \* \* \* \*

"(b) Circumstances of adjustment.

"When a determination under the income tax laws—

"(1) Requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer; or

\* \* \* \* \* \* \*

"(5) Determines the basis \* \* \* for gain or loss on a sale or exchange, and in respect of any transaction upon which such basis depends there was an erroneous inclusion in or omission from the gross income of, or an erroneous recognition or nonrecognition of gain or loss to, the taxpayer \* \* \*

\* \* \* \* \* \* \*

and, on the date the determination becomes final, correction of the effect of the error is prevented by the operation \* \* \* of any provision of the internal-revenue laws other than this section and other than section 3761 (relating to compromises), then the effect of the error shall be corrected by an adjustment made under this section. \* \* \* such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the amount of the adjustment would be refunded or credited in the same manner as an overpayment under subsection (c) ) or by the taxpayer with respect to whom the determination is made (in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under subsection (c) ), which position is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be. \* \* \*

"(c) Method of adjustment.

"The adjustment authorized in subsection (b) shall be made by assessing and collecting, or refunding or crediting, the amount thereof, to be ascertained as provided in subsection (d), in the same manner as if it were a deficiency determined by the Commissioner with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year with respect to which the error was made, and as if on the date of the determination specified in subsection (b) one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year.

"(d) Ascertainment of amount of adjustment.

"In computing the amount of an adjustment under this section there shall first be ascertained the tax previously determined for the taxable year with respect to which the error was made. The amount of the tax previously determined shall be the excess of—

"(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return (determined as provided in section 271(b) (1) and (3) ), if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency over—

"(2) the amount of rebates, as defined in section 271(b) (2), made.

There shall then be ascertained the increase or decrease in the tax previously determined which results solely from the correct exclusion, inclusion, allowance, disallowance, recognition, or nonrecognition, of the item, inclusion, deduction, credit, gain, or loss, which was the subject of the error. The amount so ascertained (together with any amounts wrongfully collected, as additions to the tax or interest, as a result of such error) shall be the amount of the adjustment under this section.

"(e) Adjustment unaffected by other items, etc.

"The amount to be assessed and collected in the same manner as a deficiency, or to be refunded or credited in the same manner as an overpayment, under this section, shall not be diminished by any credit or set-off based upon any item, inclusion, deduction, credit, exemption, gain, or loss other than the one which was the subject of the error. Such amount, if paid, shall not be recovered by a claim or suit for refund or suit for erroneous refund based upon any item, inclusion, deduction, credit, exemption, gain, or loss other than the one which was the subject of the error. \* \* \* " 26 U.S.C. 1952 ed., § 3801; 26 U.S.C. 1952 ed. Supp. I, § 3801.

The taxpayer and others, each of whom owned a 1/13 interest in certain improved real estate in New York City and some cash, on January 29, 1932 formed a syndicate for the ownership and management of this property. In June, 1932, the syndicate transferred the property to a new corporation known as "1432 Broadway Corporation" in exchange for stock and other securities of that corporation called "debenture notes." The taxpayer, in exchange for her 1/13 interest in the syndicate, received a voting trust certificate for 30 shares of the stock of the corporation and $90,000 of its "debentures."

During the years 1932 to 1942, inclusive, distributions were made by the corporation to the holders of its "debentures," which distributions were designated as pro rata payments in reduction of principal of the "debentures." The taxpayer did not report the distributions to her as income in her returns for the years 1932 to 1942, believing the distributions to be a return of capital.

The Tax Court in April 1945, in 1432 Broadway Corporation v. Commissioner, 4 T.C. 1158, determined that the "debentures" were more nearly analogous to preferred stock than to evidences of indebtedness, and denied the corporation deductions for asserted interest accrued on those securities. The decision of the Tax Court was affirmed per curiam by the United States Court of Appeals for the Second Circuit. 160 F.2d 885.

In 1946 the 1432 Broadway Corporation consummated a sale of the real estate which constituted its main asset, and distributed the proceeds to the holders of the "debentures" as payment in partial liquidation of principal. The taxpayer received $40,000 in that year as her share of the distribution. She treated it as a return of capital and a reduction of cost basis of the "debentures," and in her income tax return for 1946 reported a capital gain of $13,-500.30, computed as follows: Original basis of asset $51,727.64, less distribu-

tions 1932 to 1942 $25,227.94, leaving an adjusted cost basis of $26,499.70, which, deducted from $40,000, left a gain of $13,500.30 for 1946.

The taxpayer in 1947 received from the corporation $24,772.06 as a final liquidating distribution on her "debentures," and reported the total amount in her return for 1947 as a capital gain.

On November 29, 1950, a timely claim for the refund of tax overpaid for the year 1947, based upon her overstatement of capital gain, was filed by the taxpayer. The claim was disallowed, and she seasonably filed an action in the District Court to recover the overpayment, alleging that the distributions received by her from 1932 to 1942 were in fact taxable dividends and not a return of capital, and that they did not affect the cost basis of her "debentures." The Government in its original answer denied that the 1932–1942 distributions were dividends. The District Court determined that the distributions during those years were dividends and did not reduce the cost basis of the "debentures," and that the taxpayer was entitled to the overpayment claimed by her, but that she was indebted to the Government for taxes which she had underpaid for the years 1932 to 1942 because of her assumption that the distributions were a return of capital affecting cost basis. D.C., 106 F.Supp. 384. The taxpayer, in her brief in the action involving her 1947 tax, had conceded the collectibility by the Government, under Section 3801(b) (5), Internal Revenue Code of 1939, of underpayments of her income taxes for the years 1932 to 1942. The District Court, after deciding that the distributions received by the taxpayer during those years were in fact dividends, gave the Government 30 days in which to file an amended pleading, if so advised, setting up the amounts due it as the result of the 1932–1942 distributions having been treated as return of capital, instead of dividends. 106 F.Supp. 384, 389. The Government thereafter, on November 5, 1952, amended its answer and asserted a right to

an offset, under Section 3801(b) (5), of the underpayment of taxes conceded by the taxpayer to be owing and unpaid for the years 1932 to 1942 by reason of the distributions received by her which were not reported in those years as taxable income. In its amended answer the Government asked that the income taxes due from the taxpayer for the years 1935 to 1942, by reason of her failure to report as taxable income the distributions from the 1432 Broadway Corporation, be offset against "any recovery by plaintiff [taxpayer] in this action." The District Court on November 28, 1952, entered judgment for the taxpayer for her overpayment of income tax for the year 1947, offsetting against it the 1935 to 1942 underpayments of income taxes.

Within one year from November 28, 1952, the taxpayer, on July 14, 1953, filed a claim, under Section 3801(c), for refund of the income tax she had overpaid for the year 1946, based upon her overstatement of capital gain for that year, asserting that her cost basis for the "debentures" was $51,727.64, and that the distribution of $40,000 on November 13, 1946, resulted in no capital gain, and left an adjusted cost basis of her "debentures" of $11,727.64. Her claim for refund was denied on the ground that it was not timely filed, and she brought the instant action to recover the overpayment of tax for the year 1946, asserting the applicability of Section 3801. The District Court, as heretofore stated, entered judgment in her favor. 138 F.Supp. 117.

In the action involving the taxpayer's overpayment of income tax for the year 1947, the District Court, after it had determined that the distributions made to the taxpayer in the years 1932 to 1942 were dividends and did not reduce the cost basis of the taxpayer's "debentures," concluded that Section 3801(b) (5) would permit the Government to set up the right to offset the underpayment of taxes for those years against the overpayment for the year 1947, if it elected to do so. The court,

therefore, gave the Government the opportunity to change its former position and to claim an offset to the extent of the underpayments in the years 1932 to 1942. This the Government elected to do, and the court, in its final judgment, allowed the offset. Thus the Government, after having denied that the distributions in 1932 to 1942 were dividends not affecting cost basis, finally elected to take the position that they were dividends and that it was entitled, under Section 3801(b) (5), to offset them against the taxpayer's overpayment of tax for the year 1947.

The Government asserts that in the instant case the taxpayer did not bring herself within Section 3801, because the granting of the offset to the Government in the litigation over the 1947 tax was not a determination adopting an inconsistent position by the Government; that the District Court erred in allowing an adjustment under Section 3801 (b) (5) for the year 1946, because the conditions that there be a determination of the basis of property and an erroneous tax treatment of an item in a year barred by the statute of limitations "in respect of any transaction upon which such basis depends" had not been met, and because Section 3801(d) and (e) prohibits correction of any error in this case except that of the erroneous treatment of 1932 to 1942 distributions from the 1432 Broadway Corporation.

The contentions of the taxpayer are that in the prior litigation, involving the taxpayer's 1947 tax, the Commissioner of Internal Revenue elected to take a position inconsistent with the erroneous recognition of gain to the taxpayer for the year 1946, which position the court adopted in the final judgment in that litigation; that on the date the judgment therein became final, the correction of the taxpayer's error for the year 1946 was prevented by limitations but was still open to adjustment under Section 3801, since the final judgment in the litigation involving the 1947 tax determined the basis of the taxpayer's property for gain or loss, and in respect

of a transaction upon which such basis depended there had been an erroneous recognition of gain, and since her claim for refund of the overpayment of the 1946 tax is based upon the subject of the error with respect to which the Commissioner took an inconsistent position in the prior litigation, which position the District Court adopted in its final judgment in that litigation.

In its brief the Government says:

"Generally there are four conditions to the application of Section 3801. There must be (1) a 'determination' that (2) there was an erroneous tax treatment of an item, (3) correction of which is barred by the statute of limitations, and (4) the 'determination' must adopt a position taken by the party, in whose favor the statute of limitations would otherwise apply, inconsistent with the treatment of the item in the year of the error. Assuming, arguendo, that the first three conditions listed above are met, the taxpayer must fail in this case because the requisite element of inconsistency on the part of the Government is lacking. The only 'inconsistency' of the Government relied on by the taxpayer in the court below was that the Government, in the taxpayer's earlier suit, took the position that the 1932–1942 distributions were dividends in its third defense (in which it sought a Section 3801 adjustment by way of an offset) and also accepted the basis for the securities used by the taxpayer in her return for 1946 (which assumed that the 1932–1942 distributions were a return of capital)."

The Government contends that it took no inconsistent position in adopting the taxpayer's assertion, in the litigation involving the overpayment of her 1947 tax, that the 1932 to 1942 distributions were dividends; that its final acquiescence in her position by its amended answer created no inconsistency; that it was the taxpayer alone who adopted an inconsistent position with respect to the transaction upon which the cost basis of her "debentures" depended.

The taxpayer unquestionably, in the action involving her 1947 tax, took the position that the distributions received by her in 1932 to 1942 were dividends not affecting cost basis of her "debentures," and that she had erroneously treated the distributions as reducing such basis. Her position in that regard was inconsistent with her former treatment of those items in her returns. The Government, however, after first denying, in the case involving the 1947 tax, that the 1932 to 1942 distributions were dividends, changed its position and alleged that they were. We think, therefore, that it adopted a position inconsistent with the earlier treatment of these distributions and inconsistent with what it had contended was the proper adjusted cost basis of the taxpayer's "debentures" on which her gain or loss for the year 1946 depended. The record shows that as late as July 28, 1949, the Government's position was that the distributions received by the taxpayer were a return of capital.

█ It is, no doubt, true that one claiming the benefits of Section 3801 must assume the burden of proving the existence of the prerequisites to its applicability. MacDonald v. Commissioner, 17 T.C. 934, 940; Brennen v. Commissioner, 20 T.C. 495, 499; Schulman v. Commissioner, 21 T.C. 403, 406; Landau v. Commissioner, 21 T.C. 414, 420. That, however, does not mean that the statute should be so strictly or narrowly interpreted as to defeat its apparent purpose, which it has been said was "to provide a fair and workable formula under which taxpayers and the Government would be given relief from the unfair and unjust results occasioned by corrections, by final determinations, of errors of either the taxpayer or the Commissioner of Internal Revenue, or both, in connection with proper treatment of items affecting taxable income and tax liability in more than one year." Gooch

Milling & Elevator Co. v. United States, 111 Ct.Cl. 576, 78 F.Supp. 94, 100.

■ It seems to us, as it did to the District Court, that the taxpayer's claim for a refund of the overpayment of her 1946 income tax, under the circumstances of this case, came fairly within the purview of Section 3801, and that she was entitled to the judgment she obtained.

The judgment is affirmed.